SOUTH SIDE BANK & TRUST CO., Plaintiff-Appellant, *v.* NATHAN YORKE *et al.*, Defendant-Appellee.

(No. 56734;

First District (3rd Division)—November 21, 1973.

Norman H. Nachman, Allan G. Sweig, and Harold J. Green, all of Chicago, for appellant.

John J. Coffey, of Rothschild, Barry & Myers, of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, South Side Bank & Trust Co., brought this action in the circuit court of Cook County against defendant Nathan Yorke as assignee for the benefit of creditors of American Plumbing Supply Co., hereafter called American. The action was brought to determine the validity of plaintiff's claim against American in the assignment proceedings.

American, a partnership, was owned by Samuel Kaplan and his brother, Joseph Kaplan. Plaintiff had loaned $140,000 to American. The note evidencing the loan was executed by American, and also by the partners individually, their respective wives and their father. After the assignment for the benefit of creditors, plaintiff obtained a judgment by confession against American and the Kaplans in the sum of $147,300 including attorney's fees of $7,300.

Defendant accepted plaintiff's claim against American in the amount of $147,300; however, certain creditors objected to defendant's report and to plaintiff's claim being allowed in that amount. These creditors contended that plaintiff's claim should be reduced by the proceeds of the sale of the collateral pledged to plaintiff by the Kaplans individually, and by deducting the $7,300 attorney's fees included in the judgment. After hearing testimony and argument by counsel and considering memoranda of law, the trial court sustained the creditors' objections and reduced plaintiff's claim to $36,726.27. Plaintiff appeals. Although several creditors objected to plaintiff's claim in the trial court, only one creditor, Rockford Drop Forge Co., hereafter called Rockford, has filed an appearance and answering brief in this court.

The primary issue is whether plaintiff was entitled to have its claim against American allowed in full without deduction of the proceeds realized from the personal assets of the Kaplans. Plaintiff also argues

that it was entitled to include in its claim against American the attorney's fees obtained in the judgment. The facts, which are undisputed, are as follows.

In 1961 Samuel Kaplan applied to plaintiff for an unsecured loan to American. Plaintiff refused, but agreed to make a secured loan. On behalf of American, Samuel then offered plaintiff the beneficial interest in two land trusts as collateral to secure the payment of the loan to American. One land trust was owned by Samuel, Joseph and their respective wives; the other trust was owned by their father, Meyer Kaplan. After receiving assignments of the beneficial interests in the land trusts from the Kaplans, plaintiff loaned American $140,000.

On September 24, 1969, a renewal note for the previous loan in the amount of $140,000 was executed. The note was signed as follows:

"Samuel Kaplan—Evelyn P. Kaplan

Joseph B. Kaplan—Sara Kaplan

Meyer Kaplan

American Plumbing Supply Co.

By: Samuel Kaplan Partner

By: Joseph B. Kaplan Partner"

The proceeds of the loan has been paid to American only, and none were received by the Kaplans individually. Neither the father nor the wives had any interest in American.

On November 19, 1969 the partners executed an assignment of all of American's assets to defendant. At the time plaintiff was holding the beneficial interest in the two land trusts. The value of those beneficial interests to plaintiff as established by sales on March 1, 1970 and June 10, 1971 was $107,251.65. On February 2, 1970 plaintiff confessed judgment against American and the five Kaplans for $147,300 including attorney's fees.

On July 27, 1971, the trial court entered an order allowing plaintiff's claim, but in the reduced amount of $36,726.27. The court arrived at that figure by excluding the net proceeds realized by plaintiff from the sales of the land trust properties owned by the Kaplans, and by excluding the attorney's fees included in plaintiff's judgment. In reaching this decision, the trial judge held that the five Kaplans were comakers and principal obligors of the note with American, rather than accommodation makers-sureties. The judge stated that he so concluded because it was a family loan, and the Kaplans received value and benefit from the loan.

The trial judge allowed the various creditors a total of $235,078 in claims against American. The record indicates that defendant will have available approximately $50,000 for distribution to the creditors. Thus, if plaintiff's claim had been allowed in full, plaintiff would have realized

a total of $128,550.93 from the sale of the land trusts plus defendant's distribution; under the instant court order, plaintiff will receive a total of $115,059.35.

Plaintiff's primary contention is that the trial court erred in deducting from its claim against American the proceeds realized from the sale of the personal assets of the Kaplans. In order to resolve that issue, we shall initially determine whether the Kaplans were comakers on the note, or whether they were accommodation-sureties.

Under the undisputed facts, we find that the Kaplans were accommodation-sureties of the note. Indeed, although several creditors argued in the trial court that the Kaplans were comakers, the appellee Rockford, both in the trial court and in this court, concedes that the Kaplans were accommodation-sureties on the note.

The Illinois Uniform Commercial Code, Ill. Rev. Stat. 1969, ch. 26, par. 3—415(1), provides as follows:

> "(1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it."

The Committee Comment to the above subsection indicates that an accommodation party is always a surety.

■■ It seems evident that the Kaplans, in individually signing the American note, were lending their personal credit to American and were acting as accommodation parties. After plaintiff refused to make an unsecured loan to American, the five Kaplans pledged to plaintiff their beneficial interests in the land trusts they personally owned. American had no interest in the land trusts. None of the Kaplans personally received any part of the proceeds of plaintiff's loan to American, as the proceeds went directly to American. Moreover, it is well settled that one member of a family may be a surety for another family member. (*Stone v. Billings* (1897), 167 Ill. 170; *Pritchard v. Fruit* (1917), 208 Ill.App. 77.) Additionally, the language of the prior law which had made lack of consideration a prerequisite for the status of an accommodation party has been eliminated in the Illinois Uniform Commercial Code. The Kaplans clearly were sureties on American's debt to plaintiff.

■■ By statute and case law, it is well settled that the proceeds of the sureties' collateral do not diminish the amount of the creditor's claim against the principal obligor, although, of course, the creditor cannot collect more than the value of its claim.

Section 40 of the Illinois Uniform Partnership Act, Ill. Rev. Stat. 1969, ch. 106½, par. 40, provides in part as follows:

> "(h) When partnership property and the individual properties of the partners are in the possession of a court for distribution, part-

nership creditors shall have priority on partnership property and separate creditors on individual property, saving the rights of lien or secured creditors as heretofore.

(i) Where a partner has become bankrupt or his estate is insolvent the claims against his separate property shall rank in the following order:

    I. Those owing to separate creditors.

    II. Those owing to partnership creditors."

The federal Bankruptcy Act, 11 U.S.C. §23, contains the same rule and provides in part as follows:

"g. The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts and the net proceeds of the individual estate of each general partner to the payment of his individual debts. Should any surplus remain of the property of any general partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus shall be distributed among the individual partners, general or limited, or added to the estate of the general partners, as the case may be, in the proportion of their respective interests in the partnership and in the order of distribution provided by the laws of the State applicable thereto.

h. The court may permit the proof of the claim of the partnership estate against the individual estates, and vice versa, and may marshal the assets of the partnership estate and individual estates so as to prevent preferences and secure the equitable distribution of the property of the several estates."

Additionally, several courts have addressed the present issue. *In re Mertens* (2nd Cir. 1906), 144 F. 818, concerned an adjudicated bankrupt partnership. A bank held life insurance policies on the life of one of the individual partners as security for the payment of partnership obligations as well as the individual obligations of the partner as guarantor. The bank liquidated its collateral and filed its claim in bankruptcy against the partnership in the full amount of its claim without reducing the amount it realized on the collateral pledged by the individual partner. In allowing the full claim, the court held that since the securities were the property of the individual partner and not of the partnership when pledged to the bank, the bank was entitled to have its claim against the partnership allowed in full without any deduction.

*In re Peck* (1912), 206 N.Y. 55, 99 N.E. 258, is also applicable to the present case. In that case, both a partnership and its individual partners

executed assignments of their assets for the benefit of its respective creditors. Plaintiff filed its claim in full against both the partnership and the individual partners. The trial court sustained the objections of the assignees, and allowed plaintiff's claim in full only against the partnership, reducing the claim against the individual partners by the amounts of the dividends received from the partnership estate. In reversing the trial court, the court, citing an earlier decision, stated at p. 61:

"When a partner, by his own act, makes himself individually liable for a debt of his firm, whether by express contract or otherwise, the creditor is entitled to the full benefit of that obligation, in addition to the obligation of the firm. A creditor holding the joint obligation of a firm, and also the separate obligation of one of the copartners as surety for the same debt, is entitled to payment out of the partnership assets in preference to the individual creditors of the partners; and, if he fails to obtain payment out of those assets, he is entitled to preference over the other partnership creditors in a distribution of the separate estate of the individual partner."

Also see *Mitchell v. Hampel* (1928), 276 U.S. 299, 72 L.Ed. 582.

■■ Since plaintiff's claim against American should not have been reduced by proceeds realized from the personal assets of the two Kaplan partners, it follows that its claim against American could not be reduced by funds realized from the personal assets of the other three Kaplans. The trial court erred in deducting the proceeds of collateral pledged by the sureties from the amount of plaintiff's claim from American.

Citing *In re Bates* (1886), 118 Ill. 524, and *Levy v. Chicago National Bank* (1895), 158 Ill. 88, plaintiff maintains that even if the five Kaplans were considered comakers and principal obligors with American on the note, it would be entitled as a secured creditor to have its claim allowed in full without deduction. However, in view of our determination that the Kaplans were accommodation-sureties on the note it is unnecessary to consider that argument.

Plaintiff finally contends that the trial court erred in reducing its claim by the amount of attorney's fees included in the judgment against American. The trial court apparently made the reduction because the amount of fees was determined after the filing of plaintiff's claim.

■■ The promissory note executed in 1969 in favor of plaintiff contained a provision for payment of attorney's fees. And American's liability to plaintiff for the payment of those fees passed to defendant under the assignment for the benefit of creditors, even though the judgment was obtained after the assignment. (See *Crandall v. Carey-Lombard Lumber Co.* (1896), 63 Ill.App. 320.) In this connection, the record in the in-

stant case reveals that the trial judge approved another creditor's claim which also included attorney's fees based upon a confession judgment entered after the date of the assignment for the benefit of creditors. The court erred in excluding from plaintiff's claim attorney's fees included in plaintiff's judgment against American.

For the reasons stated, the order reducing plaintiff's claim against American is reversed, and the cause is remanded to the circuit court of Cook County with directions to allow plaintiff's claim against American in full.

Order reversed and cause remanded with directions.

DEMPSEY, P. J., and MEJDA, J., concur.