HOLCOMB STATE BANK, Plaintiff-Appellee, *v.* J. GRANT ADAMSON, Defendant-Appellant.

Second District   No. 81-255

Opinion filed July 14, 1982.

Stephen G. Balsley, of Barrick, Jackson, Switzer, Long & Balsley, of Rockford, for appellant.

James G. Ahlberg and William G. Nye, both of Fearer and Nye, of Rochelle, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Defendant J. Grant Adamson appeals from a judgment in favor of Holcomb State Bank for $13,157.53, the amount of the principal and interest on a note which he co-signed and which was in default. Adamson contends that the extension of the due date of the note without his consent released him from liability. We agree, and reverse.

The evidence adduced at trial reveals that Meinick P. Wick, Adamson's son-in-law, sought a loan of $10,000 from the bank for his mushroom business. The bank would not approve the loan unless Wick found a co-maker approved by the bank. The bank president suggested that Adamson co-sign the note, which he did. On the note was handwritten, "For use in Wick's Mushroom Business" and, at the bottom, "This is Wick's Note & Adamson is co-signer." The bank credited $10,000 to the mushroom company account. Adamson did not receive any of the proceeds from the loan.

The promissory note was dated April 27, 1979. It became due October 27, 1979. Wick paid the interest due on that date but failed to pay any of the principal. On December 15, 1979, the bank and Wick entered into an agreement to extend the due date to March 4, 1980. The interest rate was increased from 10% to 14% per annum. The note was not paid by March 4, 1980, and was in default after that date. The bank president testified that a notice of the extension was mailed to Adamson; however, there is no record that such a notice was sent to Adamson or that Adamson signed an extension form. An officer of the bank testified that he had discussed extending the note with Adamson, but that Adamson had refused to sign an extension of the note. The witness asserted that

Adamson expressed the intention to sign a new note but that one was never made. Adamson testified that he learned of the extension two weeks after it had been approved. After the note had become due he talked to an officer of the bank on a number of occasions about getting the note "straightened out." The "hassle" the bank gave him after the note became due was for payment of the overdue interest, not payment of the note, he testified. Adamson testified that he never agreed to extend the note.

After hearing all the evidence, the court found that Adamson was an accommodation party but that an accommodation party was not discharged by an extension of time given by the holder to the principal maker without the accommodating maker's consent. He cited as authority *Kratovil v. Thieda* (1966), 36 Ill. 2d 247, 222 N.E.2d 485, a decision based upon the Uniform Negotiable Instrument Act.

Adamson moved for reconsideration of the judgment, on the ground that under the Uniform Commercial Code—Commercial Paper (Ill. Rev. Stat. 1979, ch. 26, par. 3—101 *et seq.*) which superseded the Uniform Negotiable Instrument Act, he is not liable for the note. After reconsideration the court reiterated its conclusion that *Kratovil* applied and affirmed its original ruling.

Adamson appeals, contenting that he signed the note as an accommodation party, and that the extension of the note without his consent and without the express reservation of rights by the bank released him from his obligation under the note.

Section 3—606 of the Uniform Commercial Code states conditions under which a party to an instrument is discharged. The section provides in pertinent part:

> "(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder
>
> > (a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary * * *." Ill. Rev. Stat. 1979, ch. 26, par. 3—606(1)(a).

■■ The term "any party" as used in this section refers not to co-makers but to persons who "sign ostensibly as makers but who are in fact surety or accommodation makers * * *." (*Godfrey State Bank v. Mundy* (1980),

90 Ill. App. 3d 142, 144, 412 N.E.2d 1131, 1134.) An accommodation party thus is released from his liability on a note when it is extended without his consent or without express reservation of rights by the holder.

Adamson can claim the defense provided by section 3—606 only if he is an accommodation party.

■■ The trial court found Adamson to be an accommodation party, and we agree. An accommodation party is "one who signs the instrument in any capacity for the purpose of lending his name to another party to it." (Ill. Rev. Stat. 1979, ch. 26, par. 3—415(1); *Marcus v. Wilson* (1973), 16 Ill. App. 3d 724, 306 N.E.2d 554.) The parties' intention is the significant element in determining whether a party is an accommodation maker. (*Godfrey State Bank v. Mundy* (1980), 90 Ill. App. 3d 142, 412 N.E.2d 1131.) When a party receives no direct benefit from the execution of the note it is likely he will be regarded as an accommodation party. (*Godfrey State Bank v. Mundy*.) The parties' intention regarding Adamson's status was shown both by the writing on the note and by oral proof, which is permitted by section 3—415(3) (Ill. Rev. Stat. 1979, ch. 26, par. 3—415(3)), against one who is not a holder in due course with notice of the accommodation. The evidence that the bank knew Wick alone sought the loan and that the amount of the loan was credited to Wick's account indicates, contrary to the bank's assertion, that "all the facts and circumstances known to [the bank] at the time" of the making of the note gave the bank reason to know of Adamson's status as accommodation party (Ill. Rev. Stat. 1979, ch. 26, par. 1—201(25)(c)). The bank thus could not be a holder in due course without notice of accommodation, and the use of parol evidence was proper.

■■■ That evidence shows that only Wick sought the loan. The bank would not approve the loan unless a co-maker approved by the bank also signed. Adamson signed the note at the bank's suggestion. Adamson was not in business with Wick. The entire amount of the loan was credited to the mushroom company's bank account; Adamson received none of the loan. This evidence, together with the memoranda written on the note, "For use in Wick's Mushroom Business," and "This is Wick's Note & Adamson is co-signer," supports the finding that Adamson was an accommodation party. The fact that Adamson signed the note where makers normally sign does not deny him this status. *Godfrey State Bank v. Mundy* (1980), 90 Ill. App. 3d 142, 412 N.E.2d 1131.

■■ The bank argues, however, that whether or not defendant is an accommodation party he cannot claim the protection of section 3—606 because he consented to the extension. Printed on the back of the note is the following sentence:

> "For Value Received, I hereby guarantee payment at maturity of the within note to the holder thereof, and authorize any extension

or extensions the holder may grant the maker, and waive presentment, demand, notice of nonpayment, protest and diligence in collecting the same."

The bank asserts that Adamson is bound by these words, citing section 3—118(f) of the Commercial Code which states in pertinent part:

"A consent to extension, expressed in the instrument, is binding upon secondary parties and accommodation makers." Ill. Rev. Stat. 1979, ch. 26, par. 3—118(f).

We do not think, however, that the words on the back of this note bind every signer of the instrument. The consent to an extension following the words guaranteeing payment is stated in conjunction with those words of *guaranty*. Only one who guarantees payment of this instrument consents to the rest of the matters contained in the sentence, including consent to the extension of the note. The question to consider next, then, is whether Adamson is a guarantor. Section 3—416 of the Commercial Code concerns the contract of a guarantor and provides, in pertinent part:

" 'Payment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party." Ill. Rev. Stat. 1979, ch. 26, par. 3—416(1).

The section provides that a contract guaranteeing payment is made by words of guaranty "added to a signature," and we think that these words of guaranty printed in isolation on the reverse side of the note from the parties' signatures are not words added to Adamson's signature so as to bind him to a guaranty of payment of the note. We conclude, therefore, that Adamson was not a guarantor of the note and that the consent to extension and other conditions stated in conjunction with the words of guaranty had no application with regard to him.

■■ The bank also argues that Adamson consented to the extension of the note by his actions. A bank officer testified that he tried unsuccessfully to get Adamson to sign an extension agreement and that Adamson suggested instead renegotiation of the note. Adamson testified he did not learn of the extension until two weeks after it was made. He refused to sign the extension and instead proposed a renegotiation of the note. We do not think Adamson's knowledge about the extension after it was given and his willingness to discuss a new arrangement while flatly refusing to sign an extension constitute a consent to the extension agreement between Wick and the bank.

Finally, an accommodation party, even if he has not consented to an extension, may yet be held bound to an extension if the holder expressly reserved its rights against him. (Ill. Rev. Stat. 1979, ch. 26, par.

3—606(2)(a).) There is no evidence, however, that the bank expressly reserved rights against Adamson.

We conclude therefore that Adamson, an accommodation party who did not consent to the extension of the note and against whom no express reservation of right is alleged, is not bound by the note extended by Wick and the bank. We reverse the judgment of the Ogle County circuit court.

Reversed.

UNVERZAGT and VAN DEUSEN, JJ., concur.