Gretchen SCHMUCKIE, Appellant,

v.

James N. ALVEY and Mary E. Alvey, Appellees.

No. 87–SC–670–DG.

Supreme Court of Kentucky.

Oct. 6, 1988.

William H. Lawrence, H. Joseph Marshall, Louisville, for appellant.

Fred E. Fischer, Louisville, for appellees.

LAMBERT, Justice.

Upon motion of appellant Gretchen Schmuckie, this Court granted discretionary review. The precise issue before us is whether a maker[1] of a promissory note may be discharged from liability as a result of the holder's impairment of collateral which secures payment of the instrument.

Appellees, James N. Alvey and Mary E. Alvey, conveyed a parcel of improved real property to James M. Schmuckie and Gretchen Schmuckie, husband and wife, and Joseph Sostarich and Doris Sostarich, husband and wife, for the sum of $230,000. Contemporaneous with the conveyance and in partial payment of the purchase price, the Schmuckies and Sostariches executed a "First Lien" promissory note in favor of the Alveys for the sum of $165,000. In the deed, a vendor's lien was retained to secure payment of the unpaid purchase money.

Thereafter, and contrary to a provision in the deed which prohibited sale of the real property, the Schmuckies and Sostariches conveyed the property, for valuable consideration, to Shively Lanes, Ltd., a Kentucky limited partnership. Gretchen Schmuckie and Doris Sostarich had no interest in the limited partnership, but James M. Schmuckie and Joseph Sostarich were the general partners. From the proceeds of this sale, none of the parties made any payment upon the Alvey debt. In the deed to Shively Lanes, reference was made to the vendor's lien in favor of the Alveys, but Shively Lanes did not assume the indebtedness.

After acquiring the real property, Shively Lanes applied to Louisville Home Federal Savings and Loan Association for a loan of approximately $500,000 to make improvements on the property. As a condition to making the loan, the lender required a first lien position. In response to a request from Shively Lanes, and for valuable consideration, the Alveys executed an

---

1. As used in this opinion, the terms "maker" and "co-maker" do not include accommodation parties. The factor which determines a party's status is whether that party received a direct benefit from the execution of the instrument or whether he signed the instrument to lend his name to another party. See *Crimmins v. Lowry,* 691 S.W.2d 582 (Tex.1985) (concurring opinion by Ray, J.), and KRS 355.3–415. Mrs. Schmuckie does not contend that she signed the instrument as an accommodation party and the trial court found that she was "a signatory on the note and owner of an undivided one-fourth interest in the property."

agreement whereby they subordinated their vendors lien to the mortgage in favor of Louisville Home Federal. The trial court found that "this (the subordination) was done without Mrs. Schmuckie's consent or understanding."

Upon default by the Schmuckies and Sostariches in payment of the note, the Alveys brought an action for recovery of the unpaid balance, about $80,000. During the pendency of the action, Joseph and Doris Sostarich instituted a proceeding under Chapter 7 of the Bankruptcy Act and their liability on the note was discharged. Judgment was entered against James M. Schmuckie, but as to Gretchen Schmuckie, the action was dismissed.

As grounds for dismissal of the claim against Gretchen Schmuckie, the trial court held that Alveys' voluntary subordination of their lien in favor of the lien of Louisville Home Federal constituted an impairment of collateral bringing Mrs. Schmuckie within the protection afforded by KRS 355.-3–606(1)(b). The trial court said:

> Her (Mrs. Schmuckie's) position changed from one where the collateral securing her obligation more than equaled the amount of the note to one where the first mortgage to Louisville Home exceeded the value of the collateral.

Alveys appealed to the Court of Appeals and the decision of the trial court was reversed. Defining the issue as "whether a co-maker of a note is entitled to the defense of impairment of collateral under KRS 355.3–606(1)(b)," the Court below followed its decision in *Ramsey v. First National Bank and Trust Company of Corbin,* Ky.App., 683 S.W.2d 947 (1984), and denied relief to Mrs. Schmuckie. It held that the discharge provisions of the statute apply only to accommodation parties or guarantors and that the language "any party" is limited to sureties or accommodation parties even though they may appear on the instrument as makers.

■ Resolution of this case requires us to construe KRS 355.3–606(1)(b). The statute is as follows:

> (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder
>
> (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

At first blush, the language "any party to the instrument" would appear to include makers as well as accommodation parties whether they appear as makers or endorsers. However, on more thorough examination of the statutory language, the underlying purpose, and the relationship of this statute to other provisions of the Uniform Commercial Code, we are persuaded that a more narrow construction is required. Accordingly, we hold that KRS 355.3–606(1)(b) applies only to accommodation parties whether they appear as makers or endorsers, but does not apply to makers.

■ A negotiable instrument is an *unconditional* order or promise to pay a sum certain in money.[2] KRS 355.3–104. If the instrument is "subject to or governed by another agreement," its negotiability is destroyed, and the determination of whether an instrument is unconditional must be made from the content of the instrument itself. KRS 355.3–105(2)(a). Upon execution of a negotiable instrument, the maker engages that he will "pay the instrument according to its tenor." KRS 355.3–413. "Thus, the maker's (contractual) liability is unconditional and absolute; ..." J. White and R. Summers, *Uniform Commercial Code,* (2d ed. 1980) pp. 498–499.

■ It is not uncommon, of course, for a promissory note to be signed by two or more persons as co-makers. In the absence of an express agreement to the contrary, such persons are jointly and severally liable to the holder even though the instrument contains no such express provi-

2. Mrs. Schmuckie contends that the phrase "First Lien Note" appearing at the top of the promissory note which she executed is substantive and that subordination of the lien constituted a breach of a material provision of the note resulting in a discharge of her liability. This argument is refuted by KRS 355.3–104, .3–105, and .3–112. If such a provision were enforced, the instrument would not be "unconditional" and thus, not a negotiable instrument.

sion. KRS 355.3–118. As between or among themselves, however, in the absence of evidence of a contrary agreement, co-makers are presumed to be liable in equal amounts and a right of contribution, based upon an implied contract of reimbursement and not the instrument, exists between or among them. 11 *Am.Jur.2d*, "Bills & Notes" § 588 (1963).

■ On the other hand, the status of accommodation makers differs significantly from that of makers. Under KRS 355.3–415, an accommodation party does not lose his status as such even though he executes the instrument as a maker. In such a case, the holder may proceed directly against the maker, the accommodation maker, or both. Upon payment of the instrument, however, the accommodation maker has recourse against the maker and may prove his status as an accommodation maker by oral evidence. KRS 355.3–415(3) and (5).

■ From the foregoing, it is apparent that an important distinction exists between makers and accommodation makers. While either has primary liability to the holder, upon payment the accommodation maker has *recourse* upon the instrument against the maker. Co-makers, however, are limited to asserting claims for contribution upon an express or implied contract.

■ In the statute before us, KRS 355.-3–606(1)(b), the right of recourse is an essential element. To illustrate this and for

better understanding generally, the statute may be read as follows:

> The holder discharges any party to the instrument to the extent that … the holder unjustifiably impairs any collateral for the instrument given by … the party or any person against whom he has a right of recourse.

The initial phrase "any party" is limited by the remainder of the sentence to another party "against whom he has a right of recourse." Said otherwise, a party seeking discharge must have a right of recourse against another party which has been impaired by the holder's action. This view is consistent with the protection given accommodation makers by granting them a right of recourse on the instrument, but denied makers when proceeding against one another for contribution. The rationale for this disparate treatment appears to be the consideration received by the maker, but not by accommodation makers.

Our position on this issue is clearly in line with prior decisions of the Court of Appeals of Kentucky[3], the "Kentucky Commentary" which accompanies KRS 355.3–606(1)(b)[4], the statute in effect prior to the adoption of the Uniform Commercial Code[5], and a clear majority of state jurisdictions[6]. This view has been criticized, however, by text writers and a minority of state courts as being contrary to the language of the statute[7]. Other texts have indicated that the language of the statute

---

**3.** *Ramsey v. First National Bank and Trust Company of Corbin,* Ky.App., 683 S.W.2d 947 (1984); *Nunnelley v. Herndon,* Ky.App., 685 S.W.2d 206 (1985).

**4.** *Baldwin's Kentucky Revised Statutes Annotated.*

**5.** See KRS 356.120 (repealed 1960).

**6.** *Commonwealth Insurance Systems, Inc. v. Kersten,* 40 Cal.App.3d 1014, 115 Cal.Rptr. 653, 663 (1974); *Farmers State Bank of Oakley v. Cooper,* 227 Kan. 547, 608 P.2d 929, 933 (1980); *Holcomb State Bank v. Adamson,* 107 Ill.App.3d 908, 63 Ill.Dec. 704, 438 N.E.2d 635 (1982); *EL-CE Storms Trust v. Svetahor,* Mont., 724 P.2d 704 (1986); *Bank of New Jersey v. Pulini,* 194 N.J.Super. 163, 476 A.2d 797 (1984); *Citizens State Bank v. Richart,* 16 Ohio App.3d 445, 476 N.E.2d 383 (1984); *Oregon Bank v. Baardson,*

256 Or. 454, 473 P.2d 1015 (1970); *Commerce Union Bank v. Davis,* Tenn.App., 581 S.W.2d 142 (1978); *Peoples Bank of Point Pleasant v. Pied Piper Retreat Inc.,* 158 W.Va. 170, 209 S.E.2d 573 (1974); *Wohlhuter v. St. Charles Lumber and Fuel Co.,* 62 Ill.2d 16, 338 N.E.2d 179 (1975); *Smiley v. Wheeler,* 602 P.2d 209 (Okla.1979); and *United States v. UNUM Inc.,* 658 F.2d 300 (5th Cir.1981).

**7.** D. Leibson and R. Nowka, *The Uniform Commercial Code of Kentucky* § 3.3(F)(1) (Supp. 1987) p. 29 endorsing the view set forth in *Bishop v. United Missouri Bank of Carthage,* 647 S.W.2d 625 (Mo.App.1983); *Southwest Florida Production v. Schirow,* Fla.App., 388 So.2d 338 (1980); *Rushton v. U.M. & M. Credit Corporation,* 245 Ark. 703, 434 S.W.2d 81 (1968).

is ambiguous[8]. Of the state court decisions consulted, *EL–CE Storms Trust, Etc. v. Svetahor*, 724 P.2d 704 (Mont.1986), is particularly persuasive. In addressing a claim for discharge under MCA 30–3–606, a statute which, like its counterpart in Kentucky, is a verbatim adoption of the Uniform Commercial Code, the Court at length discussed the statutory language, its interpretation, and its relationship to other sections of the Code. The Court in *EL–CE Storms Trust* explained its decision as follows:

> We find that the majority rule is the better approach. The comments to § 30–3–606 make it clear that the statute discharges "any party who is in the position of a surety, having a right of recourse ..." Makers and co-makers are not sureties and do not have a right of recourse on the instrument. A maker is primarily liable on the instrument and cannot look to anyone else for payment. Similarly, co-makers are primarily liable on an instrument. As between co-makers, each is ultimately liable for the obligation. Although one co-maker may have a right of contribution from the other co-maker if the former pays more than his share, he does not have a right of recourse for the entire payment made. However, a party who occupies the position of a surety does have a right of recourse on the instrument for the full amount owing if he is made to pay.

We could not conclude this opinion without revisiting the facts of this case. As found by the trial court, the Alveys' execution of the subordination agreement impaired the collateral for the note executed by Mrs. Schmuckie. On the other hand, Mrs. Schmuckie conveyed the property to the limited partnership contrary to an express provision of the vendor's lien. She did not apply any part of the proceeds to the Alvey indebtedness nor did she seek discharge upon the note. Moreover, by alienation of the property she divested herself of any right to prevent modification of lien priority then in existence. It cannot be disputed that Mrs. Schmuckie's conveyance made it possible for Shively Lanes to seek an additional loan which necessitated subordination of the Alvey loan.

In final analysis, it appears that either Mrs. Schmuckie or the Alveys will lose a substantial sum of money. While the equities are in conflict, at the time of this transaction, the prevailing view in American law denied makers the protection afforded by KRS 355.3–606(1)(b). As such, Mrs. Schmuckie had no reason to believe that she would be entitled to the benefit of the statute. Moreover, due to the interstate nature of commercial transactions, we believe there is a substantial need for uniformity among the states. It would be unwise for this Court to depart from a rule of law which is clearly a majority rule in American jurisdictions, a rule heretofore adopted in *Ramsey v. First National Bank and Trust Company of Corbin, supra,* and *Nunnelley v. Herndon,* Ky.App., 685 S.W.2d 206 (1985), and join a minority of states which view the statute differently.

Upon execution of the promissory note, Mrs. Schmuckie unconditionally engaged to "pay the instrument according to its tenor." Her promise must be enforced.

We affirm the Court of Appeals.

STEPHENS, C.J., and LEIBSON and STEPHENSON, JJ., concur.

GANT and VANCE, JJ., dissent.

WINTERSHEIMER, J., dissents by separate opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent because the plain meaning of the words "any party" controls.

The question is whether under any circumstances a comaker of a note can avail himself of the defense of unjustifiable impairment of collateral under KRS 355.3–606(1)(b) in order to relieve him of his un-

---

**8.** J. White and R. Summers, *Uniform Commercial Code,* (2d ed. 1980) pp. 524–525 (Footnote 125).

derlying obligation to the holder of the note.

The Alveys conveyed real property to James M. Schmuckie, Sr. and Gretchen Schmuckie, his wife, and Joseph Sostarich and Doris Sostarich, his wife by deed dated November 1, 1977. On that same date the grantees gave the Alveys a First Lien Note. This note read in part, "This is the one installment note mentioned in and secured by a lien retained in a deed of this date from James N. Alvey and Mary E. Alvey to James M. Schmuckie and Joseph Sostarich." By a deed which on its face is dated November 2, 1977, notarized on April 4, 1978 and recorded on April 28, 1978, Gretchen Schmuckie and the other three grantees conveyed their interest in the realty to Shively Lanes, Ltd., a Kentucky limited partnership. This deed contained the provision that the property was subject to the vendor's lien.

Subsequent to Gretchen Schmuckie (hereinafter Gretchen) conveying her interest in the property to Shively Lanes, the Alveys without the consent or knowledge of Gretchen, executed a subordination agreement on June 23, 1978 for $540,000 and a second subordination agreement on November 1, 1978 for $52,000. In a pretrial memorandum the Alveys stated:

> On or about 11/1/78, the property was refinanced at which time the Plaintiffs (The Alveys) were paid as set forth in the closing statement. Two notes were payable to the Plaintiffs, the first in the amount of $56,000, payable at 9% on 10/8/78 and it was so paid. The final note was in the amount of $79,201.84 payable at 8½% in installments of $403.98 to each of the Plaintiffs monthly with the first payment due on 12/1/78. Payments were made to 4/1/82, with no further payments being made since that time.

The Alveys admit in their answer to interrogatories that the monthly payments on the note from December 1, 1978 to April 1, 1982 were made to them by Shively Lanes Ltd. In reply to the question of why Gretchen did not sign the subordination agreement and mortgage, the Alveys stated that her signature was not necessary as she was no longer owner of the property in question. There is no doubt that at the time of the execution of the subordination agreement the Alveys knew Gretchen had no title or interest in the property. It is also apparent from the language of the deed and First Lien note and from the actions of the parties leading up to this lawsuit, that James Schmuckie and Joseph Sostarich were understood by the Alveys to be the principal parties of the property transaction.

The majority opinion states that a negotiable instrument is an unconditional order to pay a sum certain and the maker's liability is unconditional and absolute. Here we are not dealing with a holder in due course against whom valid defenses cannot be asserted. Certainly if there were a title defect in the property, the makers could assert their defenses to the defect against the Alveys, or any party not a holder in due course. KRS 355.3–306.

The matter of the unconditional promise is a nonissue in this case. The real question is whether under any circumstances a comaker of a note can avail himself of the defense of unjustifiable impairment of collateral under KRS 355.3–606(1)(b) in order to relieve him of his underlying obligation to the holder of the note.

A number of jurisdictions have held that the term "any party" as found in Section 3–606 applies to those individuals signing ostensibly as makers but who are in fact sureties or accommodation makers. The defense does not apply to a principal maker. The majority opinion cites the authority for this view. However, other courts have allowed principal makers to use the defense provided in Section 3–606(1)(b) under various circumstances. *Hughes v. Tyler*, 485 So.2d 1026 (Miss.1986); *Madill Bank & Trust Co. v. Herrmann*, 738 P.2d 567 (Okl.App.1987); *Farmers & Merchants Bank v. Poe*, 19 Ark.App. 151, 718 S.W.2d 457 (1986); *Crimmins v. Lowry*, 691 S.W. 2d 582 (Tex.1985); *Bishop v. United Missouri Bank of Carthage*, 647 S.W.2d 625 (Mo.App.1983); *Southwest Florida Pro-*

*duction Credit Assn. v. Schirow*, Fla.App., 388 So.2d 338 (1980).

In aid of interpreting KRS 355.3–606, the commentary states in part:

> The words "any party to the instrument" remove any uncertainty under former KRS 356.120. Suretyship defenses here provided are not limited to parties who are secondarily liable "but are available to *any party who is in the position of a surety having a right of recourse either on the instrument or dehors it,* including an accommodation maker or acceptor known to the holder to be so." (Emphasis added.) KRS 355.3–606 paragraph 1 of the Commentary

This commentary includes but does not limit the 3–606(1)(b) defense to accommodation makers and acceptors. The plain meaning of KRS 355.3–606 is that the unjustifiable impairment of collateral defense is available to (1) any party to the instrument; (2) who is in the position of a surety and; (3) who has a right of recourse either on or outside of the instrument.

In order for Gretchen to use this defense, she must meet the preceding three criteria. It is evident from the note that she is a party to the instrument. The second requirement is that she must be in the position of a surety. The Supreme Court of Texas in *Crimmins v. Lowry, supra,* held that a comaker of a note is in the position of a surety to the extent he promises to answer for the portion of the debt that benefits his comakers. To this extent, he has a potential right of recourse against his comaker. But in this case, we do not have to reach the holding of *Crimmins,* because Lowry was in the same position at the time of the alleged impairment of collateral as he was when he executed the note. Here Gretchen had changed her position to that of a surety only with the knowledge and acquiescence of the Alveys. The facts of this case are similar to those in *Hughes v. Tyler, supra.* In that case, Tyler gave Hughes a promissory note for $100,000 due on or before March 15, 1982 for partial payment on certain real estate. Later, Tyler conveyed the land to Whisenhut, and by mutual agreement of all parties, Whisenhut assumed the loans on the property, which included the Tyler note. Hughes subordinated the Tyler note to a loan which greatly exceeded the value of the property and to which Tyler did not consent. Upon Whisenhut's default on its loans to Travelers, Travelers foreclosed on their deed of trust on the real estate and no proceeds from the sale of the property were available to pay the Tyler note.

The *Tyler* court stated:

> "Today, we hold this much, that the mortgagee or security holder cannot escape some responsibility to such nonsecurity interest debtor to avoid a harmful value impairment in the collateral. Any party, who has no right, title or interest in the security, will be released under the provisions of Section 75–3–606 by such an action of the security holder. We conclude that Tyler is such a party.
>
> Something approaching a trust relationship exists between the holder of a note and a party who has signed a note but has no right title, or interest in the security. The holder cannot be at liberty to dispose of the collateral as he sees fit to the detriment of such nonprotected party, and then expect such party to make up the difference between the impaired security and the debt. To hold otherwise would put the parties to the note at the mercy of the security holder." *Hughes v. Tyler, supra,* at 1029.

From this language, it is obvious the *Tyler* court believed that Tyler was in the position of a surety after he conveyed away his interest in the property.

K.R.S. 355.1–103 provides that general principals of law and equity shall supplement this chapter unless displaced by a particular provision. The Restatement of Security, Section 83 (1941) would consider Schmuckie to be in a surety position. Section 83 states in part:

> The suretyship relationship is created where the surety:
>
> (c) having been a principal obligor, his obligation, without a novation, has been assumed by another or *his property has been transferred under such circumstances as to place the property under*

*the primary burden of the obligation.* (Emphasis added.)

Comment (e) to Section 83 states in part:

Where the grantee takes subject to the mortgage, but without assuming the debt it secures, the land is regarded as bearing the principal burden of the mortgage and the mortgagor, is a *surety* to the extent of the value of the land. (Emphasis added.)

Furthermore, Section 114 of the Restatement of Security states:

Where a person whom the creditor reasonably believes to be a principal is in fact a surety, or *where a principal becomes a surety* the creditor is affected by the incidence of suretyship from the time he has knowledge of it. (Emphasis added.)

The Alveys had knowledge of the fact that Gretchen was in a surety position at the time they executed the subordination agreement and their consent to this changed position was not required to bind them to this suretyship relationship. *Cf.* Comment (a) to Section 114.

The last requirement to be able to use the defense is that Gretchen must have had a right of recourse against the debtor Shively Lanes, either on the instrument or outside the instrument. Her right of recourse was outside of the instrument. The deed transferring the property to Shively Lanes provided that the property was subject to the First Lien Note. Upon default of payment on the note by Shively Lanes, Gretchen had a right of recourse against the partnership and could have foreclosed on the property to satisfy her indebtedness on the promissory note.

Gretchen is a party to the instrument entitled to use the unjustifiable impairment of collateral defense, and but for the impairment of collateral by the Alveys, the property was of sufficient value to satisfy her promissory note.

The majority opinion points out that the rationale for disparate treatment between makers and accommodation parties is that makers receive consideration and accommodation parties do not. However, the subordination agreement benefited only Shively Lanes and the Alveys. The Alveys accepted the subordination agreement as part of the refinancing of the property. The Alveys also accepted the benefits of this refinancing and should be made to bear its risks. The Alveys could not reasonably have believed that Gretchen was other than a surety.

I would reverse the Court of Appeals.