Stephen R. NARANS, SDKD, Ltd., a Colorado limited partnership; North Basin Investments, a Wyoming corporation; and Energy Inn Partnership, Appellants (Defendants),

v.

Al PAULSEN, Appellee (Plaintiff).

No. 90-6.

Supreme Court of Wyoming.

Dec. 17, 1990.

George E. Powers, Jr., of Godfrey & Sundahl, Cheyenne, for appellants.

W.W. Reeves of Reeves & Murdock, Casper, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

The central question presented in this appeal is whether one of several co-makers on an original promissory note can become, on a subsequent renewal of that note, an accommodation party who, after he pays off the note, is entitled to recover on the note from the other original co-makers. After a bench trial, the district court judge found that Al Paulsen, O.D., who along with his business associates had signed the original note, was an accommodation party on the last of several subsequent renewals of that note and was, therefore, entitled to recover from his business associates on the note which he had paid off after the note was in default. Dr. Paulsen's business associates appeal from that judgment.

We affirm.

Appellants Narans and North Basin Investment (formerly High Country Corporation) state the issues as:

I. When a party, who is primarily liable on an obligation and who executes a promissory note as a maker, later pays off the obligation and reacquires the note, thereby discharging the note, can the party maintain any cause of action against any co-makers upon the note itself?

II. Did the agreement of December 30, 1986, constitute a release by plaintiff-appellee of defendant-appellants Narans, Energy Inn Partnership and SDKD, Ltd., for claims arising out of the existing partnership debt, reserving only a right to enforce the covenent [sic] of High Country Corporation to assume responsibility for that debt?

III. Did the district court abuse its discretion when it denied defendant's motion to amend answers and later proceeded to enter judgment upon a finding of fact which was contradicted by the evidence submitted at trial?

Appellee Paulsen rephrases these issues as:

1. May a partner [Appellee Paulsen], who signs a renewal note for a partnership debt after his withdrawal from the partnership because his signature is required by the lender as a condition of continuing the credit, be an accommodation maker on the note so that he acquires the rights of the holder of the note when he has paid it?

2. Did the release by Appellee Paulsen of all claims, "which may now exist," also release claims arising after the date of the release?

3. Did the District Court abuse its discretion when it denied Defendants' Motion to Amend Answers, which was made one day before the trial, and argued at the opening of the trial?

## FACTS

The Energy Inn Partnership was originally formed to develop and operate a Holiday Inn in Gillette, Wyoming. On March 1, 1984, partners High Country Corporation (now North Basin Investments) (50% partnership interest), SDKD, Ltd. (25% interest), and Dr. Paulsen (25% interest) executed a "master note" to the Security Bank of Gillette (now First Interstate Bank of Gillette) for $150,000. The loan proceeds were used to cover Energy Inn Partnership's operating expenses, in particular preexisting supply creditor debts, not Dr. Paulsen's partnership contribution. At maturity this note was marked "Paid by Renewal" and a new note was signed by co-makers Energy Inn Partnership (by Dr. Paulsen), High Country Corporation (by John Rijo), and SDKD, Ltd. (by Steve Nar-

ans). Two renewal notes followed, on January 7, 1986 and July 31, 1986, both signed by co-makers Energy Inn Partnership, High Country Corporation, and SDKD, Ltd. On December 20, 1986, another renewal note was signed by co-makers Energy Inn Partnership (by Steve Narans), High Country Corporation (by William Gingrich), SDKD, Ltd. (by Steve Narans), and Dr. Paulsen. This renewal note bore a maturity date of June 30, 1987.

Ten days after the December 20, 1986 renewal note was signed, Dr. Paulsen, High Country Corporation, and Gillette Lodging, Inc. executed a buy-sell agreement covering all of Dr. Paulsen's various partnership interests.[1] Of the $100,000 purchase price, the parties allocated $20,000 for Dr. Paulsen's interest in Energy Inn Partnership. With respect to this interest, Dr. Paulsen delivered all of his interest (25%) in partnership profits and losses and 24/25ths of his capital interest. As to Dr. Paulsen's remaining 1% capital interest, Gillette Lodging, Inc. was given an option to purchase that small percentage interest. All of the $100,000 purchase price payments were to be applied to Energy Inn Partnership's loan balance at the bank, which balance was $81,250 as of December 20, 1986, the most recent renewal.

After executing the December 30, 1986 buy-sell agreement, the partnership stopped sending monthly profit and loss reports to Dr. Paulsen. Dr. Paulsen did not take part in affairs of the partnership after that date. He gave the bank a copy of the buy-sell agreement. He asked the bank to release him from the obligation represented by the renewal note, but the bank refused. On two subsequent renewals of the note, July 15, 1987, and November 1, 1987, he signed as a co-maker along with Energy Inn Partnership, High Country Corporation, and SDKD, Ltd. With respect to this last renewal note of November 1, 1987, Dr. Paulsen signed twice, as a partner of Energy Inn Partnership and as an individual. There was evidence at trial that when Dr. Paulsen signed the Decem-

ber 1986 buy-sell agreement his intention was that he was relieving himself of the obligation to the bank and his co-makers on that note were assuming that obligation in full. There was evidence that Energy Inn Partnership intended to keep the credit at the bank, have the note renewed from time to time, and pay it according to its terms. According to Steve Narans' trial testimony, "We wanted to keep [the credit at the bank] in place so that Dr. Paulsen would not have to pay it off." Narans also testified that it was represented on Form K–1 to the 1987 Energy Inn Partnership income tax return that Dr. Paulsen had no liability for any partnership debts. There was evidence that Dr. Paulsen continued to sign the note renewals as a help to the business associates who had bought him out.

The Energy Inn Partnership defaulted on the November 1, 1987 renewal note which had a balance of $76,250. There was evidence that the partnership defaulted because the business had failed and it simply did not have the money to continue and not because the partnership claimed the note represented Dr. Paulsen's partnership debt. The bank looked to Dr. Paulsen as a co-maker. He paid off the note, and the bank endorsed it and assigned it to him on July 8, 1988. Dr. Paulsen then initiated this action. The district court awarded Dr. Paulsen $86,805 for payment of the note, interest and attorney's fees. This appeal followed.

## STANDARD OF REVIEW

This court presumes the district court's findings of fact are correct and will not disturb such findings on appeal unless they are inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence. *Chapman v. Mutual Life Insurance Company of New York*, 800 P.2d 1147 (Wyo.1990). The question is not whether we would have reached the same result, but whether the evidence is sufficient to support the trial court's result. *Id.* To determine whether evidence presented at trial was sufficient to support the judgment this court first of all gives deference

---

1. In addition to his interest in Energy Inn Partnership, Dr. Paulsen had interests in the Gillette II Partnership, the Gillette Econo Lodge Limited Partnership, and the Gillette Holiday Inn Liquors, Inc., a Wyoming corporation.

to the trial court's determination because it was able to judge the demeanor of the witnesses. *In Interest of N.M. and A.C.,* 794 P.2d 564 (Wyo.1990). We then accept the evidence of the prevailing party as true and give that party the benefit of all favorable inferences that can fairly be drawn from its evidence, while disregarding conflicting evidence. *Id.* We are not directed to any clear error, and the weight of the evidence sustains the district court's holding.

## ACCOMMODATION MAKER STATUS

Appellants claim that Dr. Paulsen was simply a co-maker on the original note and all subsequent renewals, including the last one on November 1, 1987, and not an accommodation party as found by the district court. If Dr. Paulsen was a co-maker and not an accommodation party, then his paying off the defaulted note discharged the debt, not only as to him but as to his co-makers as well, thus barring his action against them for recovery of the full amount of the note. On the other hand, if Dr. Paulsen was an accommodation party, then he enjoyed the statutory right to recourse for the amount paid to the holder of the note against his co-makers as the party accommodated. W.S. 34–21–352(e) (1977) (renumbered W.S. 34.1–3–415(e) (July 1990 Repl.)); 6 R. Anderson, Uniform Commercial Code, § 3–415:42 (3d Ed.1984).

 This court has not previously discussed what factors must be considered in the determination of whether a party enjoys accommodation maker status. Appellants and Dr. Paulsen have referred us to a number of cases on the subject, and we have found additional legal authority to supplement their offering. From this combination of legal authority, we understand that a variety of principles are generally applicable. A party claiming accommodation maker status has the burden of proof on the point. 6 R. Anderson, *supra,* § 3–415:12, at 349. That a party signs as a co-maker does not establish that he is not an accommodation maker. *Id.* § 3–415:26, at 357. A party cannot be an accommodation maker with respect to his own debt.

*Id.* § 3–415:19, at 353. In determining the status of a signer of a renewal note, it is necessary to examine the entire series of transactions and also see the manner in which he signed the original note. *Id.* § 3–415:7, at 345–46. Whether one is an accommodation maker is a question of the intentions of the party claiming that status, the party alleged to be the accommodated party, and the party holding the note when the alleged accommodation maker signed the note. *Id.* § 3–415:16, at 351. If the accommodation maker status is not readily apparent from the face of the note itself, parol evidence is admissible to establish the intentions of those concerned. *Id.* § 3–415:32, at 360. A party who does not directly benefit from the note is likely to be held to be an accommodation maker. *Id.* § 3–415:18, at 352. With respect to these foregoing factors, *see generally, Holcomb State Bank v. Adamson,* 107 Ill.App.3d 908, 63 Ill.Dec. 704, 438 N.E.2d 635 (1982); *South Side Bank & Trust Co. v. Yorke,* 15 Ill.App.3d 948, 305 N.E.2d 367 (1973); *El-Ce Storms Trust v. Svetahor,* 223 Mont. 113, 724 P.2d 704 (1986); *Mooney v. GR and Associates,* 746 P.2d 1174 (Utah App. 1987); *Utah Farm Production Credit Association v. Watts,* 737 P.2d 154 (Utah 1987).

 No one of the above factors conclusively establishes the maker's status. Generally speaking, the courts have applied a two-stage analysis with these factors in mind. In the first stage, the court simply examines the note or renewals in question for evidence of any expression of limitation of liability accompanying the maker's signature. If no such expression is evident, as there was not on either the original note or any of the renewals in this case, the fact finder moves to the second stage and considers parol evidence as previously described.

 From the record there is evidence that the original note's proceeds were not for Dr. Paulsen's direct benefit, but rather for the purpose of covering Energy Inn Partnership's pre-existing debts. Although Dr. Paulsen's signature as a co-maker appears on the original note, it is absent from

several subsequent renewals on which the names of Energy Inn Partnership, High Country Corporation, and SDKD, Ltd. consistently appear as principal co-makers. From the evidence the district court could have reasonably concluded that the bank, as the holder of the note, intended Dr. Paulsen to have been an accommodation maker. This conclusion was buttressed by Dr. Paulsen's signature reappearing on the last renewal dated November 1, 1987, not once but twice. Although he signed as a partner, he also signed as an individual. The district court found some ambiguity regarding Dr. Paulsen's partnership status in light of the December 30, 1986 buy-sell agreement. It appears the district court resolved that ambiguity in Dr. Paulsen's favor based on all the evidence, including the testimony about the absence of interaction between Dr. Paulsen and the business affairs of the partnership after the buy-sell agreement was signed. In particular, Dr. Paulsen did not receive financial reports and was not involved in partnership business. The district court also had evidence that Dr. Paulsen signed the renewals after the sale of his interests only to help the partnership to continue to obtain the credit; he received no direct personal benefit from any renewal. There was evidence that Dr. Paulsen did not share in any of the partnership's profits or losses after signing the buy-sell agreement and that the parties' intentions were that the obligation evidenced by the renewals was the sole responsibility of the partnership. Applying the accommodation maker analysis to the facts found by the district court, we hold they form an adequate basis for that court's decision in Dr. Paulsen's favor.

We conclude that the district court's judgment that Dr. Paulsen was an accommodation maker is adequately supported by record evidence and not contrary to the great weight of the evidence. The district court had sufficient facts before it to find that Dr. Paulsen was no longer a partner, but signed the notes issued after the buy-sell agreement only as an accommodation to the remaining Energy Inn partners.

## THE RELEASE PROVISIONS

Appellants next contend that Dr. Paulsen's suit on the note is barred by the pertinent release provision in the December 30, 1986 buy-sell agreement. The provision reads:

Paulsen, for himself, his heirs and assigns, hereby releases High Country and Stephen R. Narans, the Energy Inn Partnership, the Gillette II Partnership, and the Gillette Econo Lodge Limited Partnership, the Gillette Holiday Inn Liquors, Inc., their officers, directors, shareholders, employees, agents, attorneys, partners, trustees, beneficiaries, heirs, successors and assigns from any and all claims demands and causes of action *which may now exist*, whether presently known or unknown. (emphasis added).

The district court found that the provisions were inapplicable because Paulsen's claim arose *after* the agreement.

The trial court was correct. If the language of the agreement is clear and unambiguous, it expresses and controls the intent of the parties. *State v. Pennzoil Company*, 752 P.2d 975, 978 (Wyo.1988). The release provision is not ambiguous, and by its plain meaning applies only to claims existing at the time the buy-sell agreement was signed. Dr. Paulsen's claim did not arise until he paid off the note in July of 1988, and so is not barred by the release language in the buy-sell agreement.

## DENIAL OF THE MOTION TO AMEND

Finally, appellants claim that the district court abused its discretion when it denied their motion to amend their answer. The motion to amend was made on October 5, 1989, on the eve of trial. Appellants' motion was based on an application for extension of time to file the 1987 partnership tax return prepared by the partnership's accounting firm. This request suggests that SDKD and Narans were not involved in the partnership in 1987, but instead that High Country and Dr. Paulsen were the only two partners, High Country having a 99% interest and Dr. Paulsen the remaining 1%.

Appellants answered Dr. Paulsen's complaint on January 26, 1989, and had several months to prepare for trial. The district court's pre-trial order filed May 11, 1989, shows that the parties neither offered nor anticipated any amendments to the pleadings. Dr. Paulsen countered the motion with assertions that his 1987 income tax return did not contain the schedule, that he understood changes in participation in the partnership had taken place since he had left it but did not know what those changes were or when they occurred, and that appellants were represented by the same counsel who had written the buy-sell agreement and attempted to negotiate a settlement. He also argued that the delay which would have been required to conduct further discovery would be expensive and thus would prejudice him.

W.R.C.P. 15(a) does provide that leave of the court to amend will be "freely given when justice so requires." However, liberal application does not mean unlimited license to amend. This court has said before that "allowance or disallowance of an amendment to the pleadings is within the sound discretion of the district court." *Robertson v. TWP, Inc.*, 656 P.2d 547, 551 (Wyo.1983). "[J]udicial discretion [is] 'a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.'" *Kennedy v. Kennedy*, 761 P.2d 995, 998 (Wyo.1988) (quoting *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)). Although it is always easy for those on the secure heights of hindsight to suggest another course might have been taken, that is not to say the district court abused its discretion.

Rule 15(a) does not require that trial be delayed on such tenuous grounds less than twenty four hours before it is to begin. Appellants' evidence did not establish that justice would be furthered by permitting the amendment, or that the court acted arbitrarily or capriciously. Consequently, we cannot say that the district court abused its discretion in denying the motion to amend.

Appellants have not carried their burden on any of their arguments of error. The judgment of the trial court is affirmed in all respects.

URBIGKIT, C.J., files a dissenting opinion.

URBIGKIT, Chief Justice, dissenting.

Analysis of the facts of this case reveals that, by denial of a motion for leave to amend to delete inappropriately admitted and clearly erroneous allegations, the trial court tried a case that factually did not exist. This majority then, in misinterpreting the documents and details, misconstrues the issues presented. Since the citations of authorities are inappropriately applied by a misunderstanding of the basic transaction, the result achieved is just plain wrong. Consequently, whether or not the local resident doctor should be repaid what he lost in his inopportune partnership venture, the basis for decision here is legally erroneous. I consequently dissent.

Dr. Alfred William Paulsen, a Gillette optometrist, became the owner of a twenty acre tract of Gillette, Wyoming real estate upon which he wanted to build a motel. For that purpose, Energy Inn Partnership was formed in 1976, a Holiday Inn franchise was obtained and a motel built, in which partnership he acquired a twenty-five percent interest.[1] The great Gillette oil and coal boom came to subside and was followed in this enterprise by partnership calls for capital infusion. The record reflects that the initiating promissory note for this litigation was signed by the partnership and the partners on September 1, 1984, in the amount of $150,000 in order to cover Dr. Paulsen's partnership deficiency call required to provide additional capital for the venture.

By 1986, Dr. Paulsen wanted to get out and release the tiger, with the partnership then obviously in financial distress with the

---

1. Undoubtedly, the motel interest depreciation as a real estate investment afforded a significant tax offset to Dr. Paulsen's medical practice income.

local recession economy. He entered into a sales agreement where, in direct effect, he sold 24/25ths percent of his partnership interest and twenty-five percent of its loss write-off constituent in consideration of the buyer's assumption of the balance remaining due on the September 1, 1984 note which, by 1987, still totalled about $81,250. As life is wont to be, this transaction did not achieve for him either a partnership or a personal release of the liability which he originally incurred by becoming a partner in 1976 and more directly documented by his execution of the note in 1984 with subsequent renewals.[2]

Obviously, the lender bank was disinclined to release the local "solvent" obligor and, consequently, in November of 1987, Dr. Paulsen signed the extension note for the balance then remaining of $76,250. The partnership, which by then consisted in fact of High Country Corporation, ninety-nine percent, and Dr. Paulsen, one percent, had made interest payments and a modest principal reduction. Unfortunately, further payments were not made. In 1988, the lender called upon Dr. Paulsen, who had signed the 1987 note as an individual and then served as "an advisory director" of the lender bank, to pay off the note. He did, took an assignment of the note from the bank and, by this lawsuit, sued the partnership—High Country Corporation, which had purchased 24/25ths percent of his partnership interest, a former partner in the enterprise, SDKD, Ltd., and appellant Stephen R. Narans, who was a principal in both High Country Corporation and SDKD, Ltd.

The complexity of this litigation was engendered by appellants' inappropriate admission in their answers to the complaint.

In the complaint, Dr. Paulsen alleged, as relevant to this issue:

2. SDKD and High Country Corporation are partners of Energy Inn Partnership.

\* \* \* \* \* \*

5. Energy Inn Partnership and its partners High Country Corporation and SDKD have defaulted on the note, Exhibit "A" hereto.

The answers stated:

2. Defendant admits the allegations contained in paragraph 2 of Plaintiff's Complaint.

\* \* \* \* \* \*

5. Defendant admits that Energy Inn Partnership, a Partnership consisting of High County Corporation, SDKD, Ltd., and the Plaintiff, have defaulted on the note, a copy of which has been attached as Exhibit A to Plaintiff's Complaint.

There is no question within the record and the documentation provided that earlier than the 1986 buy-out transaction, SDKD, Ltd. had ceased to be a partner in the venture. As of December 30, 1986, the only partners were High Country Corporation, seventy-five percent, and Dr. Paulsen, twenty-five percent, which, after the buy-out, resulted in a partnership interest of High Country Corporation, ninety-nine percent, and Dr. Paulsen, one percent, general although limited by the profit/loss attribution clause.

The complaint was filed December 29, 1988 and the answers were filed January 26, 1989. On October 5, 1989, appellants moved to amend to withdraw an incorrect factual admission. That motion was denied and the trial court proceeded to try the case as if SDKD, Ltd. was a partner and

---

**2.** The retention by Dr. Paulsen of a one percent interest *by his request* within the 1986 buy-out transaction causes unnecessary confusion in trial court consideration and present court decision.

The subject addressed in the record is clearly understandable as the pervasive tax issue of partnership participation when depreciation recapture "possibilities" exist if a partner has achieved a negative partnership equity through depreciation tax benefit and then terminates his

interest in the partnership and receives a third-party assumption of the outstanding indebtedness.

To get out of a real estate partnership which has been losing money can, when done in the wrong way such as by foreclosure or sale, become very expensive in additional income from recaptured depreciation. What Dr. Paulsen did reflects not only reasonable but apparent sophisticated tax advice or information.

Dr. Paulsen was not a partner, neither of which is or was factually true.

Although I recognize that the "discovery" of the error in pleading came late in the proceeding, I find singular error and abuse of discretion in denial of a motion which essentially would have been no different than one presented during the trial to conform to the evidence which would relate the case to its actual facts. Holding a litigant to an erroneous and incorrect admission which is seasonably discovered and an effort at correction made does not comply with the justice proviso of W.R.C.P. 1 and the freely given concept for amendment provided in W.R.C.P. 15. *See Beaudoin v. Taylor*, 492 P.2d 966 (Wyo.1972). I agree, as Justice Guthrie so appropriately said in *Beaudoin* in direct application to this case, "[w]e merely observe it does not serve the spirit, philosophy, and purpose of the civil rules to adhere to the cause of action concept." *Id.* at 970.

Since the facts of this case were really not in conflict and the only conflict was engendered by the erroneous admission, neither delay in proceeding nor due prejudice is observed. *Bush v. Duff*, 754 P.2d 159 (Wyo.1988); *Johnson v. Aetna Cas. & Sur. Co. of Hartford, Conn.*, 608 P.2d 1299 (Wyo.1980). Abuse of discretion exists with amendment denial when it should have been allowed in the furtherance of justice. *Bush* is directly applicable here. The trial court should have heard the real case and then, within the question of the constituency of the partnership, any assertion or conclusion that Dr. Paulsen had not continued as a partner is just factually wrong.

If Dr. Paulsen had not been a partner in 1987, if SDKD, Ltd. had been a partner in 1987, and if the 1984 transaction had not involved funds acquired to serve the benefit, both direct and indirect, of Dr. Paulsen relative to the partnership financial problems and his delinquency in partnership calls, then I would concur with this majority's decision. I do not differ with the analysis as clearly defined in written agreements that the partnership and its partner, defendant High Country Corporation, intended to save Dr. Paulsen harmless from the bank indebtedness by providing him money as a characterized buy-out sum from which he could make the bank payments on the note. When the venture and its general partner, High Country Corporation, did not provide those payments, the agreement was breached and Dr. Paulsen was entitled to sue on its indemnity provisions but not on the assigned note to secure repayment. The error in result in the initial decision and instant opinion results in an improper judgment against SDKD, Ltd., a prior co-partner with Dr. Paulsen and the principal in SDKD, Ltd., Stephen R. Narans.

Further synthesized, the error in the majority opinion is the assumption that the 1984 loan, when accommodating a partnership deficiency call against a partner, is "not for [the partner's] direct benefit." The rule generally stated *is no benefit*[3] but, in any event, the factual circumstances clearly meet any of the stated tests. This majority's conclusion that follows that the partner in this circumstance was only an "accommodation maker" is factually inaccurate and erroneous as a matter of law.

If Dr. Paulsen had not been a partner in 1984 when he executed the note and had not at least arguably executed it for his direct or indirect benefit to assist a floundering business, I could also accept the authorities presented by this majority in support of the present decision. However, reading those decisions, *Mooney v. GR and Associates*, 746 P.2d 1174 (Utah App.1987); *Utah Farm Production Credit Ass'n v. Watts*, 737 P.2d 154 (Utah 1987); *El-Ce Storms Trust v. Svetahor*, 223 Mont. 113, 724 P.2d 704 (1986); *Holcomb State Bank v. Adamson*, 107 Ill.App.3d 908, 63 Ill.Dec. 704, 438 N.E.2d 635 (1982); and *South Side*

---

3. *Utah Farm Production Credit Ass'n v. Watts*, 737 P.2d 154 (Utah 1987) states the rule as direct or indirect benefit, but generally the test standard provided by the cases is unfettered "benefit." *Farmers State Bank of Oakley v. Cooper*, 227 Kan. 547, 608 P.2d 929 (1980); *Riegler v. Riegler*, 244 Ark. 483, 426 S.W.2d 789 (1968); *Commerce Union Bank v. Davis*, 581 S.W.2d 142 (Tenn.App.1978).

**366**

*Bank & Trust Co. v. Yorke,* 15 Ill.App.3d 948, 305 N.E.2d 367 (1973), are unconvincing that *this partner's execution* of that note *at that time* provides justification for the present assertion that in 1984, Dr. Paulsen was only an "accommodation maker." I further conclude that if he was a co-maker with the partners in 1984, he then continued to be a co-maker with last renewal in 1987 by virtue of his endorsed responsibility on the obligation by continued execution of the renewal note which debt had been originally incurred for his specific benefit, both direct and indirect.

Consequently, I dissent.