**COMMERCE UNION BANK,**
**Plaintiff-Appellee,**

v.

**Gerald DAVIS and Clarence Trulson,**
**Defendants-Appellants.**

Court of Appeals of Tennessee,
Middle Section.

Dec. 1, 1978.

Certiorari Denied by Supreme Court
May 7, 1979.

Herman O. Loewenstein, Nashville, Tenn., Robert J. Warner, Jr., and William W. Earthman, III, Dearborn & Ewing, Nashville, Tenn., for plaintiff-appellee.

Ronald B. Buchanan, Madison, Tenn., for defendant-appellant Gerald Davis.

## OPINION

DROWOTA, Judge.

This is a suit by Commerce Union Bank for a deficiency following the repossession and sale of an airplane pledged as collateral for a loan. The Chancellor awarded judgment to the Bank in the amount of $12,965.41, and defendant Davis appeals, alleging that the Chancellor erred in failing to find Davis an accommodation party released from liability under T.C.A. § 47–3–606. Defendant Trulson, who did not answer or defend below, is not a party to this appeal.

On January 6, 1975, Gerald Davis executed a note payable to the Bank in the amount of $30,195.60. He also granted the Bank a security interest in his Cessna 337A airplane as collateral for the indebtedness. On January 20, 1976, Davis conveyed his interest in the plane to Clarence T. Trulson. In consideration for the Bank's approval of the transfer, Davis signed a "transfer of equity" agreement wherein he agreed to remain liable on his January 6, 1975, note. Trulson also agreed to be jointly and sever-

ally liable with Davis for the remaining balance of $23,965.41. In addition, Trulson executed a security agreement pledging the plane to the Bank as collateral. From the time of the transfer until the date of the suit, however, Trulson made no payments on the note. The Bank gave no notice to Davis of Trulson's defaults on these installments until January 10, 1977, when the Bank filed suit. By the time suit was filed, Trulson had a negative net worth.

The plane was repossessed and sold, and the Chancellor awarded a judgment for the deficiency jointly and severally against Davis and Trulson.

Appellant asserts that the Chancellor's decision was in error because (a) the transfer of equity agreement and the Bank's subsequent conduct "recast" his note to that of an accommodation maker, and (b) the Bank extended the time of payment on the note without Davis's approval, suspended its right of enforcement against Trulson, and permitted Trulson to waste his assets so as to destroy Davis's right of subrogation, thereby releasing Davis from liability by virtue of T.C.A. § 47–3–606. We do not find appellant's arguments persuasive, and must affirm the Chancellor's decision.

■ T.C.A. § 47–3–415(1) defines an "accommodation party" as "one who signs [an] instrument in any capacity *for the purpose of lending his name to another party to it. . . .*" [Emphasis added.] The essential test of an accommodation party's status, then, is the purpose for which he signed the instrument. While an accommodation purpose may be determined by ascertaining a party's subjective intent, a purpose other than accommodation may be inferred by the receipt of any benefit by the party claiming accommodation status, since the "receipt of proceeds from the instrument or other direct benefit" is "generally inconsistent with accommodation status . . . ." J. White & R. Summers, *Uniform Commercial Code* 431 (1972). For decisions in other jurisdictions based on the "benefit" test, see *Reigler v. Reigler,* 244 Ark. 483, 426 S.W.2d 789 (1968); *MacArthur v. Cannon,* 4 Conn.Cir. 208, 229 A.2d 372

(1967); J. White & R. Summers, *supra,* at 431 n. 111. Accordingly, the receipt of benefits raises a presumption that a party's purpose is other than mere accommodation, and any person claiming such status must carry the burden of proof.

■ The appellant has failed to carry this burden. It is clear that the appellant received several benefits from the transfer of the aircraft to Trulson, including a favorable restructuring of his debt to the Bank and the elimination of the cost of maintaining a disabled plane. Indeed, the facts surrounding the transfer indicate that the appellant's motive was not to lend his name to Trulson in order that Trulson's note might be acceptable to the Bank, but to acquire a contract right from Trulson that Trulson would assume appellant's responsibility for making payments on appellant's note. Moreover, it must be observed that appellant's note of January 6, 1975, is the only note involved in the transaction; no cancellation of appellant's liability occurred at the time of the conveyance, nor was a new note executed by Trulson upon which appellant could have signed as accommodation comaker.

■ Appellant has ignored the "purpose" test outlined by the Code, and has instead relied upon two indices of accommodation status: the Bank's looking only to Trulson for payment of the note and his right of reimbursement against Trulson. While this in and of itself should be fatal to appellant's cause, it must be noted that even were this Court to accept appellant's arguments as the proper test of accommodation status, appellant would still not prevail. First, his right of reimbursement from Trulson derives not from the rights of an accommodation party under section 47–3–415(5), but from a contract right for payment for the aircraft conveyed. Second, the Bank, as holder of the appellant's note, was under no obligation to make presentment to appellant upon Trulson's default or to provide appellant any notice of dishonor. T.C.A. §§ 47–3–501, 504(3)(a). As comment 3 to section 47–3–504 states, "[t]he holder is entitled to expect that any one of the named

parties will pay or accept, and should not be required to go to the trouble and expense of making separate presentment to a number of them."

Appellant has asserted that even if he were not an accommodation maker, the "surety" defenses of section 47–3–606 would nevertheless be available to him as a comaker, since that code section does not expressly limit its scope to sureties. This, however, is not the law in this State. In *Commerce Union Bank v. May*, 503 S.W.2d 112, 116 (Tenn.1973), our Supreme Court stated that "the phrase, 'any party to the instrument,' is used in [section 47–3–606] to embrace parties to the instrument in addition to drawers and endorsers *who are in the position of a known surety.*" [Emphasis in original.] Thus, the defenses of that section are not available to the appellant, and further consideration of his arguments in that regard is unnecessary.

For the reasons stated herein, the decision of the Chancellor is affirmed.

Affirmed.

TODD and LEWIS, JJ., concur.