**RICEVILLE BANK, Plaintiff–Appellant,**

v.

**Jerry ARMSTRONG, Defendant–Appellee.**

Court of Appeals of Tennessee, Eastern Section.

Jan. 16, 1987.

Permission to Appeal Denied by Supreme Court April 6, 1987.

**332**

H. Chris Trew, with Higgins, Biddle & Chester, Athens, for plaintiff-appellant.

Allen H. Carter, with Carter, Reid & Harrod, Athens, for defendant-appellee.

## OPINION

SANDERS, Judge.

The Plaintiff has appealed from a decree of the chancery court dismissing its suit against the Defendant on a promissory note.

In 1981 the Defendant–Appellee, Jerry Armstrong, was engaged in the business of buying and selling cattle. To finance his operations he went to the Plaintiff–Appellant, Riceville Bank, and was given a line of credit up to $150,000. It was his understanding with the bank that when he sold cattle he would bring the purchaser to the bank and, upon his signing a note with the purchaser, the bank would loan sufficient funds to pay for the cattle. It appears that in July, 1981, Mr. Armstrong sold thirty head of cattle to Beryl D. Rhyne. Mr. Armstrong and Mr. Rhyne then went to the bank and executed a note for $36,000 and the proceeds of this loan were deposited in Mr. Armstrong's bank account. At the same time Mr. Rhyne executed a security agreement (UCC–1) giving the bank a security interest in the cattle. Subsequently, Mr. Rhyne filed bankruptcy under Chapter 11 of the Bankruptcy Act. The bank filed a claim with the bankruptcy court as a secured creditor; however, the bankruptcy court held the bank had failed to perfect its UCC–1 lien (apparently because it was not filed in the county of Mr. Rhyne's residence) and it was an unsecured creditor. The bank then filed suit in the chancery court seeking to recover from Mr. Armstrong the unpaid balance of the note of $30,325.61.

The Defendant, for answer, admitted he signed the note but said he signed the note as an accommodation endorser. He further said that because the bank had negligently failed to perfect its lien under the UCC–1 lien, it had unjustifiably impaired the collateral given and he was discharged from any liability pursuant to T.C.A. § 47–3–606. He also filed a counterclaim against the bank in which he alleged he had an agreement with the bank that if Mr. Rhyne defaulted on the note the bank would return all the cattle to him and he would pay the note. He further alleged that because the bank had failed to properly register the UCC–1, the trustee in bankruptcy had sold the cattle and the security had been lost.

Upon the trial of the case the bank admitted it had failed to properly register the UCC–1 and it was held to be an unsecured creditor in the bankruptcy proceeding. It further insisted the Defendant was not an accommodation endorser on the note, but was a co-maker of the note and as such was not entitled to be discharged from his obligation on the note under T.C.A. § 47–3–606.

At the conclusion of Plaintiff's proof, upon motion of the Defendant, the chancellor dismissed the Plaintiff's complaint and entered judgment in favor of the Defendant. The Defendant dismissed his counterclaim, and the Plaintiff has appealed.

The Appellant has presented the following issues for review: "The chancellor erred in dismissing the lawsuit at the end of Plaintiff's proof. A. Production of the promissory note entitled Riceville Bank to recover, since the Defendant failed to establish a defense; B. The chancellor erred in failing to find T.C.A. § 47–3–606 inapplicable; C. The chancellor erred in granting a discharge based on impairment of collateral, there being no proof as to the monetary extent to which the collateral had been impaired."

From our review of the record we find there is merit in the Appellant's insistence and the case must be remanded to the trial court.

T.C.A. § 47–3–606, as pertinent here, provides:

"IMPAIRMENT OF RECOURSE OR OF COLLATERAL.—(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder:"

\*    \*    \*    \*    \*    \*

"(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

■ The Plaintiff admits it failed to properly record its UCC–1 and the security interest in the cattle was lost. However, the protection of T.C.A. § 47–3–606 is not available to a maker or a co-maker of an instrument. It is available only "to drawers and endorsers who are in the position of a known surety." *See Commerce Union Bank v. May*, 503 S.W.2d 112 (Tenn. 1973) and *Commerce Union Bank v. Davis*, 581 S.W.2d 142 (Tenn.App.1978).

■ Although the Defendant, in his answer, insists he is only a surety on the note, the record before us does not sustain that insistence. The undisputed testimony of Mr. Bledsoe, who was president of the bank at the time the line of credit was established for Mr. Armstrong, is to the effect that he told Mr. Armstrong that the bank would extend him a line of credit up to $150,000 but on any loans that were made he would be the one the bank would be making the loan to; he would be required to be a co-maker on the note. The proof further shows the bank knew nothing about Mr. Rhyne who purchased the cattle, nor did the bank even make a credit check on him. The bank was relying upon Mr. Armstrong for payment of the loan. He was the one the bank was accommodating in making the loan. The note which Mr. Armstrong signed shows he signed it on its face as "Borrower." It was not signed by him on the back where endorsers are to sign.

In *Commerce Union Bank v. Davis, supra,* the court, in addressing the issue of an accommodation endorser, said:

"T.C.A. § 47–3–415(1) defines an 'accommodation party' as 'one who signs [an] instrument in any capacity *for the purpose of lending his name to another party to it.* ...' [Emphasis added.] The essential test of an accommodation party's status, then, is the purpose for which he signed the instrument. While an accommodation purpose may be determined by ascertaining a party's subjective intent, a purpose other than accommodation may be inferred by the receipt of any benefit by the party claiming accommodation status, since the 'receipt of proceeds from the instrument or other direct benefit' is 'generally inconsistent with accommodation status....' J. White & R. Summers, *Uniform Commercial Code* 431 (1972). For decisions in other jurisdictions based on the 'benefit' test, *see Riegler v. Riegler*, 244 Ark. 483, 426 S.W.2d 789 (1968); *MacArthur v. Cannon*, 4 Conn.Cir. 208, 229 A.2d 372 (1967); J. White & R. Summers, *supra,* at 431 n. 111. Accordingly, the receipt of benefits raises a presumption that a party's purpose is other than mere accommodation, and any person claiming such status must carry the burden of proof." 581 S.W.2d at 144.

Since the entire proceeds from the loan were deposited in Mr. Armstrong's bank account, it cannot be said he received no benefit from the loan. But even if it could be said that Mr. Armstrong was an accommodation endorser, the case would still have to be remanded because the record fails to show the value of the impaired collateral. In addressing this issue the court, in *Bank of Ripley v. Sadler,* 671 S.W.2d 454 (Tenn.1984), said:

"The burden of proof is upon the party asserting the impairment of collateral to prove by a preponderance of the evidence that the holder has not used reasonable care under all of the circumstances and to prove the monetary extent to which the collateral has been impaired as a result of the failure to use due care, because the discharge of the surety, if impairment is shown, is *pro tanto* only." Id. 457.

The issues are found in favor of the Appellant. The decree of the chancellor is reversed and the case is remanded for such further proceedings as the chancellor deems appropriate. If the chancellor finds Mr. Armstrong was co-maker of the note, the value of the impaired collateral will be moot. If, however, he finds Mr. Armstrong was an accommodation endorser, then the value of the impaired collateral should be determined. The cost of this appeal is taxed to the Appellee.

GODDARD and FRANKS, JJ., concur.