**In re Boyd Ashley CAPPS, Jr., Debtor.**

**Thomas H. DICKENSON,
Trustee, Plaintiff,**

v.

**AMERICAN GENERAL FINANCE, Peter
Calandruccio and Rodney Napier,
Defendants.**

**Bankruptcy No. 91–30067.
Adv. No. 91–3066.**

United States Bankruptcy Court,
E.D. Tennessee.

Jan. 15, 1992.

Frantz, McConnell & Seymour, N. David Roberts, Jr., Knoxville, Tenn., for plaintiff.

Carleton E. Bryant, IV, Knoxville, Tenn., for defendant, American General Finance.

Long, Ragsdale & Waters, P.C., John B. Waters, III, Knoxville, Tenn., for defendant, Peter Calandruccio.

Haynes, Meek, Summers & Ruble, Edward L. Summers, Knoxville, Tenn., for defendant, Rodney Napier.

## MEMORANDUM

RICHARD S. STAIR, Jr., Bankruptcy Judge.

By this adversary proceeding, the trustee seeks to avoid a security interest in and recover a Yamaha Grand Piano or its value from one or more of the defendants.  The trustee's claim is grounded upon 11 U.S.C.A. §§ 544(a), 549(a) and 550(a) (West 1979 & Supp.1991).  Additionally, the trustee contends that the defendants, American General Finance, Inc.[1] (American) and Peter Calandruccio (Calandruccio) violated the automatic stay and that he is entitled to damages pursuant to 11 U.S.C.A. § 362(h) (West Supp.1991).  A Pretrial Order defining the issues to be resolved by the court was entered on August 15, 1991.  A trial was held October 29, 1991.

For reasons hereafter discussed, the court has determined that the piano in dispute was not property of the debtor's estate and that the trustee's complaint, filed March 12, 1991, as amended April 1, 1991, must be dismissed.  Various cross-claims asserted by the defendants are thus rendered moot and need not be addressed by the court.

This is a core proceeding.  28 U.S.C.A. § 157(b)(2)(K) & (O) (West Supp.1991).

---

**1.** American General Finance, the name in which this defendant was sued by the plaintiff, and American General Finance, Inc., are the same entity.

## I

Boyd Ashley Capps, Jr. (the debtor) managed and operated a Knoxville entertainment club, Ella Guru's, Ltd. (Ella Guru's). In September, 1988, the debtor went to Music House Keyboards West (Music House), a local business establishment, seeking to purchase a grand piano for Ella Guru's. Music House maintained a financing relationship with American by which American provided purchase money financing to qualified Music House customers. The debtor advised a representative of Music House that the piano was being purchased for Ella Guru's. He was advised that Ella Guru's could not obtain financing. The debtor thereafter attempted, unsuccessfully, to obtain financing from American through Music House in his individual name. Finally, American agreed to extend credit when Calandruccio, the general partner to Ella Guru's landlord, agreed to sign the contract. On September 27, 1988, the debtor as "Buyer" executed a Retail Installment Contract governing the purchase of the piano for the sum of $11,184.00, including tax.[2] American financed the $10,000.00 net purchase price under the terms of the Retail Installment Contract assigned to it by Music House and was granted a security interest in the piano.[3] It is undisputed that American filed a financing statement locally in the office of the Register of Deeds for Knox County. It did not file its financing statement centrally in the office of the Secretary of State as is required under Tennessee law for perfection of a security interest in goods used or bought for use primarily in business. *See* Tenn.Code Ann. §§ 47–9–109 (1979) and 47–9–401 (1991). The piano was delivered by Music House to Ella Guru's business establishment and was in possession of and used by Ella Guru's at all material times thereafter. All monthly installments under the September 27, 1988 Retail Installment Contract were paid by Ella Guru's as were expenses associated with the maintenance and upkeep of the piano.[4]

Ella Guru's filed a voluntary petition under Chapter 11 on May 25, 1990, which is Case No. 90–32126. On June 26, 1990, an order was entered in the Ella Guru's case, approved by counsel for American and Ella Guru's, which "lifted" the automatic stay.[5] This order, drafted by one of the attorneys, provides "that any automatic stay which may have gone into effect as a result of the filing of this bankruptcy be lifted as to any indebtedness owed by Boyd Ashley Capps, Jr. and/or Peter C. Calandruccio to American General Finance, Inc. . . ." The Ella Guru's case was converted to Chapter 7 on December 19, 1990, and a trustee was thereafter appointed.

The debtor filed the petition initiating his Chapter 7 case on January 7, 1991. On February 7, 1991, the court entered an agreed order approved by the plaintiff and counsel for American and the debtor, which provides in its entirety:

Upon agreement of the parties as evidenced by their signatures below and it appearing to the Court that American General Finance, Inc. asserts a security

---

**2.** The Retail Installment Contract specifies that "Boyd Ashley Capps, Jr." is the "Buyer." The contract is, however, signed by the debtor and Calandruccio, each of whom is identified at their respective signature line by the pre-printed word "Buyer." The court concludes from the proof that Calandruccio was, at best, an accommodation party under Tenn.Code Ann. § 47–3–415 (1979). *See Commerce Union Bank v. Davis,* 581 S.W.2d 142 (Tenn.App.1978).

**3.** The Retail Installment Contract reflects that a $1,199.00 down payment was given toward the $11,184.00 purchase price, and that an additional $15.00 was added for "Official Fees For Security Interest Charges." The record does not establish whether a down payment was in fact paid, or, if paid, by whom paid.

**4.** The Retail Installment Contract calls for 120 monthly payments of $167.52 each commencing October 30, 1988. Ella Guru's made all monthly payments through May, 1990. Its check for the May, 1990 payment was written June 2, 1990, after it filed a petition under Chapter 11. Further, on December 7 and December 20, 1988, Ella Guru's paid Khalsa Piano Service $45.00 and $50.00, respectively, to have the piano tuned. A check to Khalsa Piano Service written by Ella Guru's on February 15, 1989, in the amount of $220.00 contains no explanation of the services rendered. *See* Exhibit 20.

**5.** The debtor's counsel, John P. Newton, Jr., is erroneously identified at his signature line on the June 26, 1990 order as "trustee."

interest on a Yamaha Grand Piano as is more fully set forth in the attached Proof of Claim, which Proof of Claim is incorporated herein for all purposes, and it further appearing to the Court that the parties have agreed that American General may take possession of the collateral pending further Order of the Court, it is hereby ORDERED that the Automatic Stay pursuant to 11 USC Section 362 be modified so as to allow American General Finance, Inc. to obtain possession of the Yamaha Grand Piano, pending further Order of the Court.

After the debtor commenced his bankruptcy case, American contacted Calandruccio seeking payment on the September 27, 1988 Retail Installment Contract. At this time the monthly payments were in arrears. In response, Calandruccio approached American seeking to pay off the note. After discussions, American agreed to accept $8,527 from Calandruccio in satisfaction of the note. On February 15, 1991, upon receipt of the $8,527, Charles Moore, American's manager, at Calandruccio's request, endorsed the following type-written language on the note:

> We hereby assign our complete interest in one Yamaha Grand Piano, Serial # 501187, model # C3E, including cover and dolly to Peter C. Calandruccio. We have no future interest in this piano. Our interest in the title is transferred to Peter Calandruccio.

Calandruccio thereafter obtained possession of the piano from Michael H. Fitzpatrick, trustee of Ella Guru's bankruptcy estate. Calandruccio subsequently sold the piano to the defendant, Rodney Napier, for $8,625. American never took physical possession of the piano pursuant to the February 7, 1991 agreed order. Until Calandruccio took possession, the piano was located at the closed Ella Guru's business site under Mr. Fitzpatrick's control. Calandruccio removed the piano upon Mr. Fitzpatrick's authorization.

**II**

The procedural posture of this adversary proceeding is somewhat convoluted. The trustee filed a complaint seeking to avoid American's security interest in the piano pursuant to Code § 544(a) and to recover the piano or its value from American pursuant to Code § 550(a). The complaint was amended to add Calandruccio and Napier as defendants. The trustee contends that American failed to perfect its security interest in the piano because it filed its financing statement locally, in the Office of the Knox County Register of Deeds. The trustee contends that as the piano was purchased for a business use, i.e., use by Ella Guru's, perfection of American's security interest is dependent upon the filing of its financing statement with the Secretary of State pursuant to Tenn.Code Ann. § 47-9-401 (Supp.1991). The trustee further contends that American and Calandruccio transferred the piano in violation of the automatic stay, thus entitling him to recover damages pursuant to Code § 362(h).[6] In response to the trustee's claims, Calandruccio filed a cross-claim against American grounded on alleged violations of the Tennessee Consumer Protection Act of 1977, Tenn.Code Ann. §§ 47-18-101 to 47-18-5002 (1988 & Supp.1991). American responded by filing a counterclaim against Calandruccio. Finally, Napier filed a cross-claim against Calandruccio based on breach of an implied warranty of good title.

**III**

Preliminarily, Calandruccio disputes that the piano is property of the debtor's estate. Rather, he contends that the piano was property of Ella Guru's. Although this issue is not raised in the Pretrial Order, it is an issue fundamental to the trustee's ability to maintain his claims. If the piano was not property of the debtor's estate, the

**6.** Bankruptcy Code § 362(h) provides: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C.A. § 362(h) (West Supp.1991).

trustee has no claim against any defendant.[7]

Ella Guru's was a limited partnership established under Tennessee law.[8] Its sole general partner was a corporation, Signs of Life, Inc., of which the debtor was president.[9] There are thirteen limited partners.[10] Under the Tennessee Uniform Limited Partnership Act, a general partner, with exceptions immaterial to this adversary proceeding, had "all the rights and powers and ... [was] subject to all the restrictions and liabilities of a partner in a partnership without limited partners...." Tenn.Code Ann. § 61–2–109 (1980). The rights and powers of a general partner under the Revised Uniform Limited Partnership Act are substantially the same. *See* Tenn.Code Ann. § 61–2–403 (1989). Under Tennessee law, limited partners are not liable for the obligations of a limited partnership and do not participate in the control of the business. Tenn.Code Ann. § 61–2–107 (1980) (Uniform Limited Partnership Act); Tenn.Code Ann. § 61–2–302 (1989) (Revised Uniform Limited Partnership Act). In the case of Ella Guru's, the general partner, Signs of Life, Inc., acting through its president, the debtor, operated, and was in control of, Ella Guru's.

Tennessee's version of the Uniform Partnership Act states in material part:

(a) All property originally brought into the partnership stock or subsequently acquired, by purchase or otherwise, on account of the partnership is partnership property.

(b) Unless the contrary intention appears, property acquired with partnership funds is partnership property.

Tenn.Code Ann. § 61–1–107 (1989).

Further, whether property is owned by an individual or a partnership is primarily a matter of the intentions of the partners. *Holcomb v. Fulton (In re Fulton)*, 43 B.R. 273 (Bankr.M.D.Tenn.1984) (trailer was property of partnership even though purchased individually by only one partner).

The intent of the partners generally determines what property will be considered partnership property as distinguished from separate property. Ascertaining that intent is a question of fact. 59A Am.Jur.2d *Partnership* § 354 (1987). [T]he partners' actual intent is determined from their apparent intent at the time the property is acquired, as shown by the facts and circumstances surrounding the transaction of purchase, considered with the conduct of the parties toward the property after the purchase. 59A Am.Jur.2d *Partnership* § 355 (1987).

At the time the piano was purchased, the general partner of Ella Guru's, acting through the debtor, intended that Ella Guru's would purchase and own the piano. Due to the inability of Ella Guru's to obtain financing, the piano was purchased in the debtor's name. Based on the evidence before the court, it can hardly be disputed that the general partner of Ella Guru's intended the piano to be partnership property. The piano was purchased exclusively for use by Ella Guru's in its business; it

---

**7.** Property of the estate is defined generally under Code § 541(a) as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a) (West 1979).

**8.** Tennessee's version of the Uniform Limited Partnership Act, Tenn.Code Ann. §§ 61–2–101 to 61–2–130 (1980), was repealed by Acts 1988, Chapter 922, § 1, effective January 1, 1989. All limited partnerships formed on or after January 1, 1989, are governed by Tennessee's Revised Uniform Limited Partnership Act, codified at Tenn.Code Ann. §§ 61–2–101 to 61–2–1208 (1989). Presumably, Ella Guru's, which according to its schedules commenced business in June, 1988, was established under the now repealed Uniform Limited Partnership Act.

**9.** The debtor testified that he was the general partner of Ella Guru's. It is undisputed that the debtor operated and controlled Ella Guru's and the distinction as to who was the general partner is perhaps one more of form rather than substance.

**10.** These facts are not part of the evidence introduced during the trial of this adversary proceeding, but are judicially noticed facts established from a review of the voluntary petition and accompanying Exhibit A filed by Ella Guru's on May 25, 1990, and by a review of the list of Equity Security Holders filed by Ella Guru's on June 14, 1990.

was at all times subsequent to its purchase located at Ella Guru's business establishment and used exclusively by Ella Guru's; all monthly payments under the September 27, 1988 Retail Installment Contract were made by Ella Guru's; expenses associated with the maintenance and upkeep of the piano were paid by Ella Guru's; and the debtor never used the piano for personal use.

The only suggestion that the debtor might have considered himself to have an interest in the piano is in the fact that the piano is scheduled as an asset in his individual case while it is not scheduled as an asset of Ella Guru's. The debtor did not, however, testify that he considered himself the owner of the piano. The explanation perhaps lies in the fact that the Retail Installment Contract assigned to American is in the debtor's name. Clearly, the evidence establishes that Ella Guru's owned the piano. The court accordingly finds that the piano was not property of the debtor's estate.

Because the piano was not property of the debtor's estate, the trustee has no standing to maintain this adversary proceeding. Accordingly, the court need not consider the merits of the trustee's claims against the respective defendants. The trustee's complaint must be dismissed as to all three defendants. This holding renders moot the cross-claims of Calandruccio and Napier and the counter-claim of American. These claims will also be dismissed.

This Memorandum constitutes findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052. An appropriate judgment will be entered.